1

2

**E-Filed 5/26/05**

3

4

5

6

7                                 NOT FOR CITATION

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   LOS ALTOS EL GRANADA INVESTORS, a          Case Number C-04-5138-JF (PVT)
     California limited partnership dba CASTLE
13   MOBILE ESTATES,                            ORDER (1) GRANTING IN PART,
                                                DENYING IN PART AND
14                        Plaintiff,            DEFERRING IN PART
                                                DEFENDANTS' MOTION TO
15          v.                                  DISMISS; AND (2) STAYING
                                                ACTION PURSUANT TO *YOUNGER*
16   CITY OF CAPITOLA, et al.,                  ABSTENTION

17                        Defendants.
                                                [Doc. No. 12]
18

19

20          Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure

21   12(b)(1) and 12(b)(6).  The Court has considered the moving and responding papers as well as

22   the oral arguments presented at the hearing on April 22, 2005.  For the reasons discussed below,

23   the motion will be granted in part, denied in part and deferred in part, and the Court will stay the

24   action pursuant to *Younger* abstention.

                                        **I. BACKGROUND**
25

26          Plaintiff Los Altos El Granada Investors owns and operates a mobilehome park in the

27   City of Capitola ("the City").  In this action Plaintiff alleges that application of a mobilehome

28   vacancy control ordinance to Plaintiff's mobilehome park has effected a taking of Plaintiff's

1  property in violation of the Fifth Amendment and has deprived Plaintiff of equal protection and

2  due process in violation of the Fourteenth Amendment.

3      The Ordinance, currently codified as Ordinance No. 770 in the Capitola Municipal Code,

4  Chapter 2.18, was enacted for the stated purpose of protecting mobilehome owners from "rapidly

5  rising space rents" that threaten investment in their homes.  Ordinance § 2.18.110.  The

6  Ordinance limits a parkowner's ability to raise rent to an annual increase of sixty percent of the

7  change in the applicable Consumer Price Index or five percent of the existing base rent,

8  whichever is lesser.  Ordinance § 2.18.220.  A parkowner may obtain an additional "limited

9  period rent increase" to recoup expenses for certain capital improvements.  Ordinance §

10  2.18.300.  These restrictions apply regardless of whether a mobilehome is sold or transferred to a

11  new owner.  Ordinance § 2.18.405.  The Ordinance articulates a presumption that the regulated

12  rent increases will provide parkowners with a fair rate of return on their investment.  Ordinance §

13  2.18.410.  A parkowner may attempt to rebut this presumption by submitting an application to

14  the city council, which acts as the City's rent control board (hereinafter "the Board"),

15  demonstrating that the parkowner is not in fact receiving a fair rate of return and that a rent

16  increase is necessary to ensure that the parkowner receives a fair rate of return.  *Id.*

17      In March 2000, Plaintiff submitted such an application to the Board, requesting a monthly

18  rent increase of between $151 and $300 per space.  The average monthly space rent at that time

19  was approximately $210.  The Board substantially denied Plaintiff's request, granting a "fair rate

20  of return" monthly rent increase of only $5.68 per space.[1]

21  **First Round In Federal Court**

22      On June 14, 2001, Plaintiff and others filed a federal action in this Court, *Hillsboro*

23  *Properties v. City of Capitola*, Case No. C-01-20543-JF.  On June 17, 2001, Plaintiff filed a

24  separate action based upon the same facts, *Los Altos El Granada Investors v. City of Capitola*,

25  Case No. C-01-20667-JF.  The Court consolidated the two actions and ultimately dismissed them

26  

---

27      [1] Plaintiff also received an ordinary annual monthly rent adjustment of $4.95 per space
    pursuant to § 2.18.220, and a limited period monthly rent increase ranging from $6.84 to $9.69

28  per space for a period of twelve months.

2

1    without leave to amend.  The understood Plaintiff to be making a number of related claims for

2    violation of federal constitutional rights under 42 U.S.C. § 1983.  First, Plaintiff alleged that the

3    Ordinance enabled mobilehome owners to capture a "premium" when selling their mobilehomes,

4    because new tenants were willing to pay far more than market price for mobilehomes located in

5    rent controlled spaces.  Plaintiff also alleged that the creation of this premium did not

6    "substantially advance" the Ordinance's stated purpose.  Finally, Plaintiff alleged that the City

7    had denied it a fair rate of return on its investment by substantially denying Plaintiff's request for

8    a rent increase.

9        The Court characterized claims based upon creation of the alleged premium and based

10   upon the "failure to substantially advance" theory as facial challenges to the Ordinance and

11   dismissed those claims as time-barred.  Order of 1/22/02 at 7-9, 11-12.  A claim asserting a facial

12   challenge to a land control regulation accrues on the date of enactment.  *Azul Pacifico, Inc. v.

13   *City of Los Angeles*, 973 F.2d 704, 704 (9th Cir. 1992).  The statute of limitations for § 1983

14   claims is the statute governing personal injury actions in the forum state.  *Wilson v. Garcia*, 471

15   U.S. 261, 276 (1985); *see also McDougal v. County of Imperial*, 942 F.2d 668, 672-74 (9th Cir.

16   1991).  In California, the statute of limitations governing personal injury actions was one year at

17   the time the Ordinance was enacted, *see* former Cal. Code Civ. Proc. § 340(3), and currently is

18   two years, *see* Cal. Code Civ. Proc. § 335.1.  Accordingly, the time for bringing a § 1983 claim

19   asserting a facial challenge to the Ordinance expired long before Plaintiff's claims were filed.

20       The Court characterized Plaintiff's claims based upon denial of the requested rent

21   increase as as-applied challenges and dismissed those claims as unripe.  Order of 1/22/02 at 9-11.

22   Under *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S.

23   172 (1985), a plaintiff asserting a regulatory taking must show (1) that the governmental agency

24   charged with implementing the regulation has rendered a final decision regarding application of

25   the regulation to the plaintiff's property, and (2) that the plaintiff has sought and been denied

26   compensation through the procedures the state has provided for that purpose.  *Id*. at 186, 194.  A

27   plaintiff may be excused from satisfying the second prong if he or she can demonstrate that the

28   state procedures for obtaining compensation are unavailable or inadequate.  *Carson Harbor

3

1  *Village, Ltd. v. City of Carson*, 353 F.3d 824, 827 (9th Cir. 2004).

2       In California, a landlord challenging a rent control ordinance satisfies the second prong of

3  *Williamson County* by complying with the procedures set forth in *Kavanau v. Santa Monica Rent*

4  *Control Bd.*, 16 Cal.4th 761 (1997) and *Galland v. City of Clovis*, 24 Cal.4th 1003 (2001).  Those

5  procedures require the landlord to challenge the rent review board's decision by filing a petition

6  for writ of administrative mandamus.  *Carson Harbor*, 353 F.3d at 828.  If the writ is granted, the

7  landlord then must seek an adjustment of future rents from the rent review board.  *Id*.  Such an

8  adjustment is referred to as a "*Kavanau* adjustment."  *Id*.  Only after the landlord has completed

9  the *Kavanau* process may he or she bring a state action for inverse condemnation or damages

10  under 42 U.S.C. § 1983.  *Id*.

11       This Court concluded that Plaintiff had not completed the required state court procedures

12  and had not demonstrated that those procedures were unavailable or inadequate.  Order of

13  1/22/02 at 9-11.  Accordingly, the Court dismissed Plaintiff's as-applied claims based upon

14  denial of the rent increase as unripe because Plaintiff had not satisfied the second prong of

15  *Williamson County*.  *Id*.  That dismissal was affirmed in an unpublished decision of the Ninth

16  Circuit, *Los Altos El Granada Investors v. City of Capitola*, 2004 WL 504556 (9th Cir. 2004).

17  With respect to this Court's dismissal of the claims based upon the alleged premium and "failure

18  to substantially advance," the Ninth Circuit concluded that this Court had erred in characterizing

19  those claims as facial challenges, holding that the claims properly were characterized as timely

20  as-applied challenges.  The Ninth Circuit nonetheless affirmed dismissal of the claims on the

21  ground that they were unripe because Plaintiff had not satisfied the second prong of *Williamson*

22  *County*.

23       **State Court**

24       On July 3, 2002, Plaintiff filed an action in the Santa Cruz Superior Court in an attempt to

25  ripen its claims.  Plaintiff alleged a claim for declaratory relief that the City's interpretation and

26  application of the Ordinance had effected a taking of Plaintiff's property in violation of the

27  California constitution, and a claim that the City's application and enforcement of the Ordinance

28  constituted inverse condemnation of Plaintiff's property.  Plaintiff also sought a writ of

4

1   administrative mandamus to overturn the Board's decision denying Plaintiff's request for a rent

2   increase.  In September 2003, the superior court sustained the City's demurrer as to the first two

3   claims, holding that to the extent that Plaintiff was asserting facial challenges to the Ordinance,

4   Plaintiff's claims were barred by the statute of limitations and the *res judicata* effect of this

5   Court's decision to that effect, and that to the extent that Plaintiff was asserting as-applied

6   challenges, Plaintiff's claims were unripe because Plaintiff had not completed the writ process

7   before filing its claims for declaratory relief and inverse condemnation.

8       **Second Round In Federal Court**

9       On August 20, 2003, Plaintiff filed a new federal action in this Court, *Los Altos El*

10  *Granada Investors v. City of Capitola*, Case No. C-03-3859-JF, alleging a taking of property in

11  violation of the Fifth Amendment and deprivation of equal protection and due process in

12  violation of the Fourteenth Amendment.  Plaintiff also sought a writ of administrative mandamus

13  under state law, essentially making an application parallel to that pending in the superior court.

14  This Court dismissed the action as unripe in light of the pendency of Plaintiff's state court

15  petition for writ of administrative mandamus.  Order of 11/13/03 at 3.  The Court declined

16  Plaintiff's request that it exercise supplemental jurisdiction over the petition for writ of

17  administrative mandamus.  *Id*. at 5.  Plaintiff did not appeal the Court's dismissal of the action.

18      **Third Round In Federal Court**

19      In June 2004, the Santa Cruz Superior Court denied the writ petition, finding that the

20  Board's denial of Plaintiff's request for a discretionary rent increase was supported by substantial

21  evidence in the record, and that Plaintiff was receiving a fair rate of return.  The superior court

22  further found that there was no persuasive evidence in the record that the Ordinance created a

23  premium and that even if a premium was created, such premium does not prevent the Ordinance

24  from substantially furthering its stated purpose, and therefore the creation of such premium does

25  not create a regulatory taking.  Following denial of the writ petition, Plaintiff sought to reassert

26  its previously dismissed claim for inverse condemnation.  The superior court denied that request,

27  stating that it would be a "cleaner procedure" to have the appellate court decide all aspects of

28  Plaintiff's takings and other claims on appeal.  Judgment was entered by the superior court on

5

1  July 8, 2004, and Plaintiff's appeal of that judgment is pending in the California Court of Appeal.

2  Plaintiff filed the instant action on December 3, 2004, asserting five claims:  (1) a taking

3  of property without just compensation in violation of the Fifth Amendment; (2) a private taking

4  of property in violation of the Fifth Amendment; (3) denial of equal protection in violation of the

5  Fourteenth Amendment; (4) denial of procedural and substantive due process in violation of the

6  Fourteenth Amendment; and (5) invalidation of a taking for failure to substantially advance a

7  legitimate state interest.  Plaintiff requests a declaration that the Ordinance effects an

8  impermissible regulatory taking and violates Plaintiff's rights to due process and equal

9  protection, damages in the amount of $10 million, an order invalidating the Ordinance's

10  application with respect to Plaintiff and costs of suit.

11  **II. LEGAL STANDARDS**

12  **A.     Rule 12(b)(1)**

13  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v.*

14  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the moving party asserts that the

15  allegations in the complaint are insufficient on their face to invoke federal jurisdiction. *Id*.  In a

16  factual attack, the moving party disputes the truth of the allegations in the complaint, which

17  otherwise would be sufficient to invoke federal jurisdiction. *Id*.  In resolving a facial attack, the

18  Court accepts the allegations in the complaint as true. *Whisnant v. United States*, 400 F.3d 1177,

19  1179 (9th Cir. 2005).  In resolving a factual attack, the Court need not presume the truthfulness

20  of the allegations set forth in the complaint and may consider evidence beyond the face of the

21  complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.;

22  *Safe Air*, 373 F.3d at 1039.  Once the moving party has presented affidavits or other evidence

23  tending to show that subject matter jurisdiction does not lie, the plaintiff must present affidavits

24  or other evidence sufficient to establish subject matter jurisdiction. *Safe Air*, 373 F.3d at 1039.

25  "[J]urisdictional dismissals in cases premised on federal-question jurisdiction are

26  exceptional." *Safe Air*, 373 F.3d at 1039 (internal quotation marks and citation omitted).

27  Dismissal usually is inappropriate when the question of jurisdiction is intertwined with the merits

28  of the action, for example, when "a statute provides the basis for both the subject matter

6

1    jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id*. (internal

2    quotation marks and citation omitted).  Under these circumstances, a motion to dismiss for lack

3    of subject matter jurisdiction is appropriate only if the allegations set forth in the complaint are

4    frivolous. *Id*. at 1040.

5    **B.     Rule 12(b)(6)**

6            For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

7    Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v.*

8    *McKeithen*, 395 U.S. 411, 421 (1969); *Argabright v. United States*, 35 F.3d 472, 474 (9th Cir.

9    1994).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

10   be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

11   When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v.*

12   *Kipp*, 90 F.3d 386, 393 (9th Cir. 1996); *Albrecht v. Lund*, 845 F.2d 193, 195-96 (9th Cir. 1988);

13   *Beezley v. Fremont Indemnity Co.*, 804 F.2d 530, 531 (9th Cir. 1986).

14                                    **III. DISCUSSION**

15   **A.     Fifth Claim Alleging Failure To Substantially Advance Legitimate State Interest**

16           Plaintiff's fifth claim alleges that the Ordinance effects a taking under the Fifth

17   Amendment and requests invalidation of this alleged taking on the ground that the Ordinance

18   fails to substantially advance a legitimate state interest.  At the time Plaintiff drafted its

19   complaint, this "substantially advances" theory commonly was used to challenge alleged takings.

20   However, the United States Supreme Court recently made clear that this theory no longer is

21   viable, stating as follows:  "[w]e hold that the 'substantially advances' formula is not a valid

22   takings test, and indeed conclude that it has no proper place in our takings jurisprudence." *Lingle*

23   *v. Chevron U.S.A. Inc.*, ___ U.S. ___, 125 S.Ct. 2074, 2087 (2005).  The City filed a notice of

24   decision on May 24, 2005, noting that *Lingle* bars Plaintiff's claim that the Ordinance does not

25   substantially advance a legitimate state interest.  Plaintiff filed a response on May 27, 2005,

26   conceding the point but asserting that "failure to substantially advance" is only one of several

27   theories asserted in this case.  Accordingly, the Court will dismiss Plaintiff's fifth claim without

28   leave to amend.

                                              7

1    **B.    Statute Of Limitations**

2         The City argues that a number of Plaintiff's claims properly are characterized as facial

3    challenges to the Ordinance and thus are time-barred.  Plaintiff argues, and the Court agrees, that

4    all of Plaintiff's claims properly are characterized as as-applied challenges.  The City argues that

5    Plaintiff's premium-based claims must be construed as facial challenges, citing *Levald, Inc. v.*

6    *City of Palm Desert*, 998 F.2d 680 (9th Cir. 1993).  In *Levald*, the owner of a mobilehome park

7    challenged the city's rent control and vacancy control ordinance as effecting a taking without just

8    compensation.  In particular, the parkowner alleged that the ordinance enabled mobilehome

9    owners to capture a premium that rightfully should belong to the parkowner, and that the

10   ordinance did not substantially advance its stated purpose.  The Ninth Circuit concluded that

11   these allegations gave rise to a facial challenge and rejected the parkowner's attempts to style the

12   claim as an as-applied challenge.  *Id*. at 689.

13        As pointed out by the Ninth Circuit in its decision affirming this Court's dismissal of

14   Plaintiff's first federal action, the holding of *Levald* was clarified by *Hacienda Valley Mobile*

15   *Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).  *Hacienda* also involved a

16   mobilehome parkowner's challenge to a city's vacancy control ordinance as a taking without just

17   compensation.  In that case, however, the court concluded that the parkowner could maintain an

18   as-applied challenge.  With respect to *Levald*, the court stated that "it was *not* the fact that Levald

19   was bringing a premium challenge that made it a facial challenge, but the *way* that Levald

20   supported the argument - by attacking only the laws - that made it a facial challenge."  *Id*.  The

21   court held that *Hacienda* was distinguishable from *Levald* because in *Hacienda* the parkowner's

22   claim was not based solely upon enactment of the ordinance but also upon complex economic

23   factors and the rent control board's refusal to grant requested rent increases.  *Id*.  Plaintiff has

24   made just such allegations in the instant case.  Accordingly, this Court concludes that Plaintiff's

25   premium-based claims properly are construed as timely as-applied challenges.[2]

26

27   ─────────────────

28        [2] The City does not contend that any of Plaintiff's as-applied challenges are time-barred.

8

**C.     Ripeness**

The City argues that Plaintiff's as-applied takings claims are unripe under *Williamson County*, and that Plaintiff's as-applied equal protection and due process claims also are unripe because those claims are subject to the same ripeness requirements as are the takings claims. Plaintiff argues that its private takings claim and its due process claim are not subject to a ripeness requirement. The Court concludes that Plaintiff has satisfied both prongs of the *Williamson County* test and therefore that all of its claims are ripe at last.

As discussed above, *Williamson County* sets forth the test for ripeness of a regulatory takings claim. A plaintiff asserting a regulatory taking must show (1) that the governmental agency charged with implementing the regulation has rendered a final decision regarding application of the regulation to the plaintiff's property, and (2) that the plaintiff has sought and been denied compensation through the procedures the state has provided for that purpose. *Williamson County*, 473 U.S. at 186, 194. A plaintiff may be excused from satisfying the second prong if he or she can demonstrate that the state procedures for obtaining compensation are unavailable or inadequate. *Carson Harbor,* 353 F.3d at 827.

There does not appear to be any dispute that Plaintiff long ago satisfied the first prong of this test. Plaintiff requested that the Board exercise its discretion to permit an additional "fair rate of return" monthly rent increase, which request was denied. *See Hacienda*, 353 F.3d at 657 (holding that city rent control commission's denial of parkowner's request for rent increase constituted a final decision for purposes of *Williamson County* ripeness inquiry). The dispute is whether Plaintiff has satisfied the second prong.

As noted above, Plaintiff filed a petition for writ of administrative mandamus in the Santa Cruz Superior Court, challenging the substantial denial of Plaintiff's request for a "fair rate of return" monthly rent increase. Plaintiff also filed claims for declaratory relief and inverse condemnation. The superior court sustained demurrers to the claims for declaratory relief and inverse condemnation, finding that those claims were unripe because Plaintiff had not completed the writ process. The superior court subsequently denied the writ petition. However, when Plaintiff sought leave to reassert its inverse condemnation claim, the superior court denied

9

1    Plaintiff's request, stating that it would be a "cleaner procedure" for Plaintiff to simply appeal

2    and ask the appellate court decide all aspects of Plaintiff's takings and other claims.  Judgment

3    was entered by the superior court on July 8, 2004, and Plaintiff's appeal of that judgment is

4    pending in the California Court of Appeal.    The question is whether Plaintiff's litigation of

5    these matters in the superior court is sufficient to satisfy the second prong of the ripeness inquiry.

6    Plaintiff argues that it has sought compensation through two avenues in the state court - the writ

7    petition and the inverse condemnation claim - and been denied.  Plaintiff argues that nothing

8    more is required to ripen its claims under *Williamson County*.  The City argues that Plaintiff's

9    claims will not be ripe until the state appellate court decides the pending appeal.

10          There does not appear to be any authority precisely on point.  However, the *Hacienda*

11   decision provides some guidance.  In that case, the plaintiff argued that the city rent control

12   commission's denial of the plaintiff's application for a rent increase satisfied the second prong of

13   the *Williamson County* ripeness inquiry.  The court rejected this argument on several grounds,

14   one of which was the court's conclusion that "the state must be aware that it is denying

15   compensation to an alleged taking when it takes an action."  *Hacienda*, 353 F.3d at 658.  The

16   court went on to state that "[w]hen the Commission denied Hacienda's rent increase, we are not

17   convinced that it was aware that its actions would constitute a taking."  *Id*.

18          Based upon this language, it appears that the court's touchstone for deciding the ripeness

19   question was whether the state had been given fair warning that the plaintiff was asserting a

20   takings claim and a fair opportunity to provide just compensation.  The state clearly *has* been

21   given such warning and opportunity in the instant case.  And, as noted, there does not appear to

22   be any authority holding that when a plaintiff has sought compensation through available state

23   procedures, and been denied such compensation, the plaintiff additionally must exhaust appellate

24   remedies in order to ripen a takings claim.  Accordingly, this Court concludes that Plaintiff has

25   satisfied the second ripeness prong.

26   **D.    *Rooker-Feldman* Doctrine**

27          The City argues that even if Plaintiff's claims are ripe for adjudication, such claims are

28   barred by the *Rooker-Feldman* doctrine, because adjudication in Plaintiff's favor on the instant

10

1   claims necessarily would require "reversing" the adjudication of the state court.  It is well-settled

2   that federal district courts do not have jurisdiction to review state court rulings.  *District of*

3   *Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*,

4   263 U.S. 413, 415-16 (1923);  *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221 (9th

5   Cir. 1994).  However, the Supreme Court recently has clarified that the doctrine does not apply in

6   the manner the City argues here.

7         In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, ___ U.S. ___, 125 S.Ct. 1517

8   (2005), the Court noted that the *Rooker-Feldman* doctrine "has sometimes been construed to

9   extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral

10  of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and

11  superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738."  *Id*. at

12  1521.  The Court clarified that "[w]hen there is parallel state and federal litigation, *Rooker-*

13  *Feldman* is not triggered simply by the entry of judgment in the state court."  *Id*. at 1526.

14  "Comity or abstention doctrines may, in various circumstances, permit or require the federal

15  court to stay or dismiss the federal action in favor of the state-court litigation."  *Id*. at 1527.

16  However, properly invoked concurrent jurisdiction does not vanish simply because the state court

17  reaches judgment on the same or related question.  *Id*.  Under those circumstances, disposition of

18  the federal action would be governed by preclusion law.  *Id*.  "If a federal plaintiff presents some

19  independent claim, albeit one that denies a legal conclusion that a state court has reached in a

20  case to which he was a party, then there is jurisdiction and state law determines whether the

21  defendant prevails under principles of preclusion."  *Id*. (internal quotation marks and citation

22  omitted).

23        Plaintiff in the instant case asserts federal constitutional claims over which this Court has

24  original jurisdiction.  The above authority makes clear that the state superior court's prior

25  adjudication of the same or similar claims does not implicate the *Rooker-Feldman* doctrine.

26  **E.    *Res Judicata***

27        The City argues that two of Plaintiff's claims are barred by the doctrine of *res judicata* -

28  the second claim asserting a private taking and the fourth claim asserting violation of due

11

1  process.  Plaintiff asserted nearly identical claims in its second round in federal court, in *Los*

2  *Altos El Granada Investors v. City of Capitola*, Case No. C-03-3859-JF.  The Court dismissed

3  that action for lack of subject matter jurisdiction after concluding that Plaintiff's claims were

4  unripe in light of Plaintiff's then-pending petition for writ of administrative mandamus.  Order of

5  11/13/03.  Because the dismissal was for lack of subject matter jurisdiction and not on the merits,

6  there is no *res judicata* bar.

7         The City points to language in the Court's order stating that Plaintiff had failed to state a

8  cognizable basis for its private takings claim, and that Plaintiff had failed to demonstrate that the

9  *Kavanau* process violated due process.  Order of 11/13/03 at 4.  The City understandably

10 maintains that those statements constituted a ruling on the merits disposing of Plaintiff's private

11 takings claim and *Kavanau*-based due process claim.  However, the Court clearly dismissed the

12 due process claim for lack of subject matter jurisdiction.  Order of 11/13/03 at 3.  Accordingly,

13 the Court's subsequent discussion of the adequacy of the *Kavanau* process must be viewed as

14 *dicta*.

15        The Court's discussion of the private takings claim is more problematic.  A private

16 takings claim is not subject to the *Williamson County* requirements, because the state cannot

17 lawfully take the property of one person for the benefit of another without a justifying public use,

18 whether or not compensation is offered.  *Kelo v. City of New London*, ___ U.S. ___, 125 S.Ct.

19 2655, 2661 (2005).  Accordingly, Plaintiff's private takings claim could not have been dismissed

20 for lack of ripeness, as were Plaintiff's other claims.  The only basis stated in the Court's order

21 for dismissing the private takings claim was failure to state a claim.  Because that order was not

22 appealed, it technically raises a *res judicata* bar to Plaintiff's assertion of a private takings claim

23 in the instant action.  However, the Court did not intend to effect a final adjudication of

24 Plaintiff's private takings claim on the merits.  Had the Court so intended, because private

25 takings claims are fact-specific, the Court would have granted Plaintiff at least one opportunity to

26 amend the claim before dismissing it on the merits.  Given its lack of precision in the prior order,

27 and the impression given by the order that the entire action was dismissed for lack of subject

28 matter jurisdiction, the Court concludes that it would be unfair to bar Plaintiff from asserting a

12

1  private takings claim in this action on the basis of *res judicata*.  The Court therefore clarifies that

2  its prior dismissal of the private takings claim was without prejudice.

3  **F.    *Younger* Abstention**

4          The City argues that, in the event the Court concludes that Plaintiff's claims are ripe for

5  adjudication and not otherwise barred, the Court should apply the *Younger[3]* abstention doctrine

6  and either dismiss Plaintiff's claims or refrain from considering the claims pending disposition of

7  the state court appeal.  The Court agrees that *Younger* abstention is appropriate.

8          The *Younger* doctrine espouses "a strong federal policy against federal-court interference

9  with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex County*

10  *Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  Also underlying the

11  *Younger* doctrine is the notion that federal courts should "avoid unwarranted determinations of

12  federal constitutional law."  *Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004).  *Younger*

13  abstention is appropriate when the state proceedings:  (1) are ongoing; (2) implicate important

14  state interests; and (3) provide the plaintiff with an adequate opportunity to litigate his or her

15  federal claims.  *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 (9th

16  Cir. 1998).

17          The first two prongs clearly are satisfied in the instant case.  With respect to the first

18  prong, Plaintiff's state court action was pending when Plaintiff filed the instant action, and

19  remains pending today.  *See Gilbertson*, 381 F.3d at 969 n.4 (holding that state court proceedings

20  "are deemed on-going for purposes of *Younger* abstention until state appellate review is

21  completed").  With respect to the second prong, the Ninth Circuit has held explicitly that

22  "California has a substantial interest in enforcing and considering the constitutionality of

23  mobilehome park rent control ordinances."  *Mission Oaks Mobile Home Park v. City of Hollister*,

24  989 F.2d 359, 360 (9th Cir. 1993), *overruled on other grounds*, *Green v. City of Tucson,* 255

25

26

27  ───────────────

28          [3] *Younger v. Harris*, 401 U.S. 37 (1971).

1   F.3d 1086 (9th Cir. 2001).[4]

2       With respect to the third prong, the Ninth Circuit has held that the state courts provide an

3   adequate forum for raising federal constitutional takings claims. *Mission Oaks*, 989 F.2d at 361.

4   Plaintiff has asserted only state law claims in the state court proceeding, and in fact attempted to

5   make an *England*[5] reservation with respect to its federal claims, which reservation was struck by

6   the superior court.  Because judgment has been entered in the superior court, and an appeal is

7   pending, an argument could be made that Plaintiff cannot at this point raise its federal

8   constitutional claims in the state proceeding.  However, the Ninth Circuit has held that when a

9   plaintiff could have presented all of his constitutional claims in the state proceeding, but chose

10  not to do so, this failure to avail himself of the opportunity does not mean that the state

11  procedures are inadequate and does not preclude *Younger* abstention. *Gilbertson*, 381 F.3d at

12  983.

13      The City argues that Plaintiff has not demonstrated that litigation of the instant action

14  would cause the type of "interference" with the pending state appeal necessary to justify *Younger*

15  abstention, citing *Montclair Parkowners Ass'n v. City of Montclair*, 264 F.3d 829 (9th Cir.

16  2001).  In *Montclair*, an association of mobilehome parkowners brought suit in federal district

17  court, alleging that the defendant city's rent control ordinance effected a takings in violation of

18  the federal constitution.  The association made an *England* reservation with respect to their

19  federal constitutional claims.  The district court abstained under *Younger* in favor of the

20

21

22      [4] *Green* overruled *Mission Oaks* to the extent that *Mission Oaks* held that a district court's
    decision to exercise *Younger* abstention is subject to review for abuse of discretion; *Green* made
23  clear that the decision to abstain is subject to review *de novo*.  *Green*, 255 F.3d at 1093.  That
    holding is immaterial to the issues addressed in this order.  However, *Green* also overruled
24  *Mission Oaks* to the extent that *Mission Oaks* would permit the exercise of *Younger* abstention
    based upon the mere pendency of parallel state proceedings; *Green* held that a prerequisite to
25  *Younger* abstention is a finding that "the relief sought in federal court would in some manner
    directly interfere with ongoing state judicial proceedings. *Id*. at 1097, 1099.  As discussed *infra*,
26  the Ninth Circuit has retreated from the latter holding of *Green*.  *See Gilbertson*, 381 F.3d at 977-
    78.
27

28      [5] *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964).

14

1   association's parallel state court action, which alleged takings and due process claims under state

2   law, and dismissed the federal action.  The Ninth Circuit reversed, relying on *Green v. City of*

3   *Tucson* for the proposition that *Younger* abstention is inappropriate based upon the mere

4   pendency of a parallel state court proceeding and that a prerequisite to *Younger* abstention is a

5   finding that the federal action would "directly interfere" with the pending state proceeding.

6   *Montclair*, 264 F.3d at 831.  The court held that the Association's federal action would not

7   directly interfere with the state court action within the meaning of *Younger*.  *Id*.

8           The City's reliance on *Montclair* is misplaced in light of the Ninth Circuit's recent

9   decision in *Gilbertson* retreating from the "direct interference" requirement.  *Gilbertson* clarifies

10  that the touchstone for *Younger* abstention is whether a the federal action would have the same

11  "practical effect" on the state proceeding as a formal injunction.  *Gilbertson*, 381 F.3d at 977-78.

12  In *Gilbertson*, the plaintiff land surveyor's state license to survey was revoked and not reinstated

13  by the state board of examiners.  The plaintiff appealed to the state appellate court.  While that

14  appeal was pending, the plaintiff filed a federal action pursuant to § 1983, asserting claims for

15  violation of the First Amendment, equal protection and due process.  The district court dismissed

16  the federal action on the basis of *Younger* abstention.  The Ninth Circuit concluded that *Younger*

17  abstention was appropriate, but held that when damages are at issue a district court should

18  exercise *Younger* abstention by staying the federal action rather than dismissing it.  *Gilbertson*,

19  381 F.3d at 968-69.  With respect to the interference question, the court concluded that "a

20  determination that the federal plaintiff's constitutional rights were violated would be just as

21  intrusive as a declaratory judgment," and thus that abstention was appropriate.  *Id*. at 980.

22          In the instant case, a determination that the City effected a taking of Plaintiff's property

23  without just compensation in violation of the Fifth Amendment would have the practical effect of

24  a declaration establishing that Plaintiff was denied a fair rate of return by the Board and that the

25  application of the Ordinance effected a confiscatory taking under state law.  This is precisely the

26  type of interference that was found adequate to warrant *Younger* abstention in *Gilbertson*.

27          During oral argument, counsel indicated that they expect disposition of the state court

28  appeal in approximately January 2006.  The Court therefore will decline to reach the City's

15

1   arguments as to the substantive merits of Plaintiff's claims, and will stay the instant action

2   pending disposition of the state court appeal.[6]

3                                      **IV. ORDER**

4       (1)     Defendants' motion to dismiss is GRANTED IN PART as to Plaintiff's fifth
                claim alleging invalidation of the alleged taking for failure to "substantially
5               advance";

6       (2)     Defendant's motion to dismiss is DENIED IN PART as set forth above;

7       (3)     The Court DEFERS consideration of Defendant's arguments as to the substantive
                merits of Plaintiff's remaining claims and STAYS the action pending disposition
8               of the pending state court appeal pursuant to *Younger* abstention; and

9       (4)     The Court sets a case management conference on January 26, 2006 so that the
                parties may apprise the Court as to the status of the state court appeal.

10

11

12

13  DATED:   7/26/05

14                                              /s/ electronic signature authorized
                                               _____
15                                              JEREMY FOGEL
                                               United States District Judge
16

17

18  _____

19      [6] Plaintiff suggests in a footnote that the Court could exercise *Pullman* abstention rather
    than *Younger* abstention. *See Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).
20  The Court agrees that *Pullman* abstention would be an appropriate alternative here.
    "Traditionally, under *Pullman*, a federal court stays and remits to state court cases involving the
21  interpretation of a challenged state statute in order to avoid making an unnecessary or premature
    constitutional decision." *United Parcel Service, Inc. v. California Public Utilities Comm'n*, 77
22  F.3d 1178, 1183 (9th Cir. 1996). *Pullman* abstention is appropriate when: (1) the complaint
    touches a sensitive area of social policy upon which the federal courts ought not to enter unless
23  no alternative to its adjudication is open; (2) such constitutional adjudication plainly can be
    avoided if a definitive ruling on the state issue would terminate the controversy; and (3) the
24  possibly determinative issue of state law is doubtful. *Sinclair Oil Corp. v. County of Santa
25  Barbara*, 96 F.3d 401, 409 (9th Cir. 1996). As discussed above, the policies underlying
    mobilehome park rent control ordinances are of particular interest to the state courts.
26  Adjudication of Plaintiff's federal constitutional claims can be avoided if Plaintiff prevails in the
    state courts. Finally, it is unclear how the state courts will resolve Plaintiff's challenges to the
27  Ordinance, the Board's decision and the *Kavanau* process as a whole.
28

                                              16

1  This Order was served on the following persons:

2

3  Mark D. Alpert       marka@hkclaw.com,

4  Robert S. Coldren      rcoldren@hkclaw.com

5  C. William Dahlin      billd@hkclaw.com,

6  Henry E. Heater       hheater@elthlaw.com, slinn@elthlaw.com

7  Linda B. Reich      lreich@elthlaw.com, msnider@elthlaw.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17